FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 31, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KINDOL LAMONTE M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:17-CV-00357-SMJ <br><br> **ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 12 & 14. Plaintiff appeals the Administrative Law Judge's ("ALJ") denial of Disability Insurance Benefits and Supplemental Security Income. ECF No. 3. Plaintiff contends the ALJ erred by (1) improperly rejecting the opinions of Plaintiff's medical sources, (2) improperly assessing Plaintiff's credibility, (3) improperly assessing the severity of Plaintiff's impairments, (4) improperly finding Plaintiff's impairments do not meet or equal the criteria of a listed impairment, (5) asking the vocational expert an incomplete hypothetical question about Plaintiff's functional limitations, and (6) failing to consider Plaintiff's borderline age. The Commissioner of the Social Security Administration

("SSA") asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Plaintiff's motion and grants the Commissioner's motion.

## I. BACKGROUND[1]

On July 1, 2013, Plaintiff protectively filed applications for benefits, alleging a disability onset date of June 1, 2008. AR[2] 25, 288–98. The SSA denied the claims initially and upon reconsideration, and Plaintiff requested a hearing. AR 155–61, 167–70, 173–75. ALJ Jesse K. Shumway presided over a video hearing from Spokane, Washington on February 22, 2016. AR 25, 50. The ALJ issued a decision unfavorable to Plaintiff. AR 25–41. The SSA Appeals Council denied Plaintiff's request for review. AR 1.

## II. ALJ FINDINGS[3]

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of June 1, 2008. AR 27. At step two,

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.
[2] For ease and consistency with the briefing, the Court cites to the consecutive pagination of the administrative record, which appears at ECF No. 9.
[3] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 26–27, and the Court presumes the parties are well acquainted with that standard. Accordingly, the Court does not restate the five-step process in this Order.

the ALJ found Plaintiff has the following severe impairments: congestive heart failure or cardiomyopathy, degenerative disc disease, major depressive disorder, anxiety, and alcohol abuse. AR 28. At step three, the ALJ found Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. AR 30. At step four, the ALJ found Plaintiff has the residual functional capacity to perform light work with certain limitations. AR 32. Further, at step four, the ALJ found Plaintiff is unable to perform any past relevant work. AR 39. Finally, at step five, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and residual functional capacity. AR 40. Accordingly, the ALJ determined Plaintiff is not disabled as defined in the Social Security Act. AR 40.

### III.     STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11. Even where the

evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## IV. ANALYSIS

### A. The ALJ reasonably weighed the opinions of Plaintiff's medical sources.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (alteration in original) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198). An ALJ must also consider opinions from other medical providers—such as nurse practitioners, chiropractors, and therapists—who are not 'acceptable medical sources.' *Id.* at 655; 20 C.F.R. §§ 404.1513(d), 416.913(d) (2016). "While those providers' opinions are not entitled to the same deference [as acceptable medical sources], an ALJ may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Revels*, 874 F.3d at 655.

#### 1. The opinion of treating physician Fizzah Ali, MD

Plaintiff argues the ALJ erred by rejecting the opinion of Plaintiff's treating

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 4

physician, hospitalist Fizzah Ali, MD. ECF No. 12 at 9–10. On May 20, 2013, Dr. Ali assessed Plaintiff and subsequently completed a physical functional evaluation form produced by the Washington State Department of Social and Health Services. AR 441–43, 693–95. Dr. Ali diagnosed Plaintiff with congestive heart failure, noted he had moderate to marked interference with his ability to perform basic work activities, and opined he was capable of performing only sedentary work. AR 442–43, 694–95. The ALJ gave this opinion little weight, reasoning, "The conclusions were reached near the time of the claimant's cardiac exacerbation. Therefore, the opinion does not reflect a durational level of impairment. In addition, in completing this form, Dr. Ali did not provide objective medical findings in support of his conclusions." AR 37.

These are specific and legitimate reasons for the ALJ to give Dr. Ali's opinion less deference. An ALJ may reasonably assign little weight to a treating physician's opinion that is not representative of a claimant's long-term functioning due to subsequent improvement in his or her condition. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Additionally, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 5

Additionally, substantial evidence supports the reasons the ALJ cited for giving Dr. Ali's opinion less deference. The record contains enough relevant evidence to persuade a reasonable person to view Dr. Ali's opinion the way the ALJ did. The ALJ's decision on this issue was rational and Plaintiff's mere disagreement with it does not mean the Court should disturb it. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Therefore, the ALJ applied the proper legal standard and substantial evidence supports his decision.

**2. 'Other source' opinions predating the alleged disability onset date**

Plaintiff argues the ALJ erred by rejecting 'other source' opinions from approximately one to two-and-a-half years before the alleged disability onset date. ECF No. 12 at 10–11. Plaintiff points to the opinions of (1) vocational rehabilitation counselor J.T. Brix, CDMS, from December 30, 2005, AR 962–64, (2) chiropractor Mark T. Huck, DC, from January 12, 2006, AR 984, (3) occupational therapist Judy Silva, OTR/L, from November 1, 2006, AR 1015–18, and (4) chiropractor Richard L. Haynes DC, from July 11, 2006; July 14, 2006; December 15, 2006; and January 17, 2007, AR 1076–79, 1094–95.

"Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. "This is especially true in cases . . . where

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 6

disability is allegedly caused by a discrete event." *Id.* But "an ALJ may not reject medical evidence solely because it predates the alleged date of the onset of disability." *Tabitha J. v. Comm'r of Soc. Sec.*, No. 4:17-cv-05111-SMJ, slip op. at 11 (E.D. Wash. July 10, 2018) (ECF No. 21). "In some cases, the time elapsed between the medical opinion and the onset may be sufficient to discount its relevance." *Id.* "However, where . . . the medical opinion evidence is from shortly before the period of alleged disability, the ALJ must provide a basis for rejecting the opinion." *Id.*

The ALJ found the disputed evidence "substantially predates the alleged disability onset date and, therefore, is largely irrelevant." AR 37. The ALJ noted the 'other source' opinions were made closer in time to Plaintiff's 2005 and 2007 motor vehicle collisions. AR 37–38; *see also* AR 33, 478, 961. After reviewing the opinions, the ALJ gave them little or partial weight because they predate the alleged disability onset date by approximately one to two-and-a-half years. AR 38. The Court finds no error in how the ALJ weighed this evidence. The opinions substantially predate the alleged disability onset date. The ALJ drew a connection explaining why the timing of the opinions negatively impacts their relevance. Ultimately, the ALJ considered the substance of the opinions and gave them at least some weight. The ALJ provided reasons germane to each 'other source' opinion that justifies giving this evidence less deference. Therefore, the ALJ applied the

proper legal standard and substantial evidence supports his decision.

### 3. Global Assessment of Functioning scores

Plaintiff argues the ALJ erred by rejecting the lowest two of Plaintiff's three Global Assessment of Functioning ("GAF") scores. ECF No. 12 at 11–12. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 723 n.1 (9th Cir. 2011) (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). A GAF score of 58 represents moderate symptoms or moderate difficulty in occupational or other functioning. *See Vasquez v. Astrue*, 572 F.3d 586, 595 (9th Cir. 2009); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1034 (9th Cir. 2003). GAF scores of 43 and 47 indicate serious symptoms or serious impairment in occupational or other functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

If an acceptable medical source assesses a GAF score, an ALJ should treat it as medical opinion evidence. *See Wellington v. Berryhill*, 878 F.3d 867, 871 n.1 (9th Cir. 2017). But if a medical provider, such as a nurse practitioner or therapist, who is not an acceptable medical source, assesses a GAF score, an ALJ should treat it as 'other source' opinion evidence.

Psychiatrist Peter M. Meis, MD, assessed Plaintiff a GAF score of 58 on September 27, 2013. AR. 533, 536. Mental health counselor Jennifer Higgins,

LMHC, assessed Plaintiff a GAF score of 43[4] on December 15, 2014. AR 918. And psychiatric nurse practitioner Benjamin R. Kadas, ARNP-BC, assessed Plaintiff a GAF score of 47 on December 31, 2014; January 14, 2015; February 10, 2015; and March 10, 2015. AR 770–72, 777–79, 785–87, 790–92, 919–21, 923–25, 927–32. Of Plaintiff's three GAF scores, one came from an acceptable medical source (Dr. Meis) and two came from 'other sources' (mental health counselor Higgins and nurse practitioner Kadas). The acceptable medical source assessed a GAF score tending to disfavor Plaintiff whereas the 'other sources' assessed GAF scores favoring Plaintiff.

Regardless of their source and favorability to Plaintiff, the ALJ gave all three GAF scores little weight, reasoning, "GAF scores are highly subjective, with no standardization, and they intertwine psychological symptoms, physical impairments, socioeconomic factors, and other elements that are irrelevant to a disability evaluation." AR 39. The ALJ was aware that the GAF score Dr. Meis assessed contradicted the GAF scores mental health counselor Higgins and psychiatric nurse practitioner Kadas assessed. AR 39. Elsewhere, the ALJ gave great weight to Dr. Meis's opinion because it is "virtually the only psychological evaluation in the medical record." AR 37. Considering all, the ALJ did not err by

---

[4] The ALJ apparently mistook this as a score of 41. AR 39. The record shows the assessed score was 43, which is in the range of scores from 41 to 50. *See* AR 918 ("Axis V Current GAF: (43) 41 – 50 Serious Symptoms Or Impairm").

giving little weight to the lowest two of Plaintiff's three GAF scores. The ALJ provided reasons germane to each 'other source' opinion that justifies giving this evidence less deference. Therefore, the ALJ applied the proper legal standard and substantial evidence supports his decision.

**B.     The ALJ reasonably assessed Plaintiff's credibility.**

Plaintiff argues the ALJ erred in assessing the credibility of Plaintiff's testimony about the severity of his symptoms. ECF No. 12 at 14–17. Where a claimant presents objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged, and there is no evidence of malingering, an ALJ "must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (quoting *Molina*, 674 F.3d at 1112). A finding that the claimant's testimony is not credible must be sufficiently specific to allow the Court to conclude the ALJ rejected it on permissible grounds and did not discredit it arbitrarily. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The ALJ found "the claimant's statements concerning the intensity,

persistence and limiting effects of [his] symptoms are not fully supported." AR 33.

In assessing Plaintiff's credibility, the ALJ made the following findings:

- "Objective medical findings do not support the level of impairment described by the claimant." AR 33.
- "The claimant's own statements suggest a greater level of functioning than he alleged." AR 34.
- "[E]vidence concerning the claimant's mental impairments show a greater level of functioning." AR 34.
- By arranging "'under-the-counter' work for shelter, . . . the claimant exhibited physical and mental abilities that he did not use in looking for work." AR 35.
- "Observations of the claimant are inconsistent with the degree of impairment alleged by him." AR 35.
- "An element of failing to follow medical advice further undercuts the claimant's allegations about the severity of his impairments." AR 35.
- Although "a failure to cease the use of tobacco is not definitive on the issue of disability," here, "the claimant's continued smoking suggests that his complaints were actually not as limiting as he recounted, which lessens the value of his allegations concerning his impairments and their effects." AR 35.
- "In fact, exaggeration is suggested in the medical record." AR 35.
- "[H]is activity level does not correspond well with the allegation of disability." AR 36.
- "The claimant has a very weak work history. . . . [T]he overall impression is that he had no particular attachment to working, even during periods in which he was not alleging disability." AR 36.
- "Possible drug seeking behavior occurred in April 2015." AR 36.

The ALJ explained each of these findings over the span of three single-spaced pages. AR 33–36. After reviewing the entire record, it is apparent to the Court that substantial evidence supports the ALJ's findings because the record contains enough relevant evidence to persuade a reasonable person to view Plaintiff's testimony the way the ALJ did. In making his observations, the ALJ identified what

parts of Plaintiff's testimony are not credible, AR 33, and what evidence undermines Plaintiff's complaints. AR 33–36. The ALJ's findings are sufficiently specific for the Court to conclude the ALJ rejected Plaintiff's testimony on permissible grounds and did not discredit it arbitrarily.[5] The Court is not persuaded

---

[5] The Court rejects Plaintiff's sweeping challenge to the permissibility of the grounds the ALJ cited, *see* ECF No. 12 at 15–17, because those grounds are adequately supported by case law and the ALJ properly applied them here, *see Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Morgan*, 169 F.3d at 599 (an ALJ may reasonably rely on a doctor's report that a claimant's mental health issues have improved with the use of medication, even when the report contradicts the claimant's subjective complaints); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996))); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) ("The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" (alterations in original) (quoting *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997))); *id.* at 959–60 (an ALJ may reasonably consider a claimant's exaggeration of symptoms and self-limiting behaviors in assessing his or her credibility); *id.* at 959 (an ALJ may reasonably consider a claimant's poor work history in assessing whether he or she is unable to work due to impairments or some other cause); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (an ALJ may reasonably consider a claimant's drug-seeking behavior in assessing his or her credibility); *Bray*, 554 F.3d at 1227 (an ALJ's consideration of smoking is harmless if the ALJ provides an independent basis for discounting a claimant's testimony).

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 12

by Plaintiff's argument that the ALJ improperly cherry-picked a few isolated instances of improvement to discount Plaintiff's testimony. *See* ECF No. 12 at 15–16. On the contrary, the ALJ properly executed his function of reviewing the entire record, weighing all the evidence, assessing each witness's credibility, and resolving discrepancies and ambiguities. In sum, the ALJ gave specific, clear and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. Therefore, the ALJ applied the proper legal standard and substantial evidence supports his decision.

**C.     The ALJ reasonably assessed the severity of Plaintiff's impairments.**

Plaintiff argues the ALJ erred in finding the following were not severe impairments: chronic obstructive pulmonary disease with shortness of breath, pleural effusion, bronchitis, cough, wheezing, and pneumonia; arthritis with hand pain and stiffness due to inflammation; radiculopathy; post-traumatic stress disorder; hypertension; splenic infarction; and renal insufficiency. ECF No. 12 at 12–13. At step two, a claimant has the burden of establishing that he or she suffers from a severe, medically determinable impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

An impairment is medically determinable if it "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 13

acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908 (2016); *see also* 20 C.F.R. §§ 404.1521, 416.921 (2017). A medically determinable impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." §§ 404.1508, 416.908.

A medically determinable impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b) (2016).

Here, after finding Plaintiff had six severe, medically determinable impairments, the ALJ found "[o]ther impairments are not severe." AR 29. The ALJ found Plaintiff's chronic obstructive pulmonary disease is not a medically determinable impairment based on the controlled medical evidence in the record. AR 29–30. The ALJ found Plaintiff's arthritis was not severe because the record lacks evidence showing it restricts his ability to perform basic work activities. AR

30. The ALJ found Plaintiff's hypertension was not severe because the record shows it improved to a benign and well-controlled status. AR 29. The ALJ acknowledged Plaintiff's radiculopathy, post-traumatic stress disorder, and splenic infarction but did not specifically mention his renal insufficiency. AR 28–29, 33. The ALJ nonetheless found these impairments are not severe. *See* AR 29–30. The ALJ was not satisfied that Plaintiff met his burden for these impairments. *See* AR 29–30.

Tellingly, Plaintiff does not argue the ALJ's findings are unsupported by substantial evidence. *See* ECF No. 12 at 12–13. Instead, Plaintiff argues substantial evidence supports his alternative interpretation of the record. *See id.* But again, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Luther*, 891 F.3d at 875. The record contains enough relevant evidence to persuade a reasonable person to view Plaintiff's impairments the way the ALJ did. The ALJ's decision on this issue was rational and Plaintiff's mere disagreement with it does not mean the Court should disturb it. Therefore, the ALJ applied the proper legal standard and substantial evidence supports his decision.

**D.    The ALJ reasonably determined Plaintiff's impairments do not meet or equal the criteria of a listed impairment.**

Plaintiff argues the ALJ erred in finding Plaintiff's degenerative disc disease does not meet or equal the criteria of listing 1.04A for spine disorders. ECF No. 12 at 13–14. At step three, a claimant has the burden of establishing that his or her

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 15

impairments meet or equal the criteria of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. *Molina*, 674 F.3d at 1110; §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2016).

Here, Plaintiff argues his degenerative disc disease meets or equals the criteria of listing 1.04A. ECF No. 12 at 13. This listing applies to spine disorders "resulting in compromise of a nerve root" along with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and . . . positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.

The ALJ found Plaintiff's degenerative disc disease does not meet listing 1.04A because "[t]he evidence does not show sustained motor loss over any twelve-month period." AR 30. Plaintiff points to several parts of the record he believes establish motor loss. *See* ECF No. 12 at 13 (citing AR 501, 891, 1103); ECF No. 15 at 7 (citing AR 891, 1106–07). But, as the ALJ found, the record simply does not reveal atrophy or muscle weakness over a twelve-month period. At the hearing, the ALJ said to Plaintiff's counsel, "[i]f we're going to find a meeting of 1.04, I've got

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 16

to have some evidence that for at least 12 consecutive months, we've got some weakness . . . ; and unless you can point me to that, I — you know, I'm not seeing it." AR 106. Plaintiff's counsel responded to the ALJ, "[w]ell, I just made the argument, Your Honor, so, you know." AR 106. But in fact, Plaintiff's counsel had not identified any evidence of atrophy or muscle weakness over a twelve-month period. *See* AR 106. The ALJ was not satisfied that Plaintiff met his burden for these impairments. *See* AR 30.

Once again, Plaintiff does not argue the ALJ's findings are unsupported by substantial evidence. *See* ECF No. 12 at 13–14. Instead, Plaintiff argues substantial evidence supports his alternative interpretation of the record. *See id.* But again, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Luther*, 891 F.3d at 875. The record contains enough relevant evidence to persuade a reasonable person to view Plaintiff's degenerative disc disease the way the ALJ did. The ALJ's decision on this issue was rational and Plaintiff's mere disagreement with it does not mean the Court should disturb it. Therefore, the ALJ applied the proper legal standard and substantial evidence supports his decision.

**E. The ALJ asked the vocational expert a complete hypothetical question about a person with Plaintiff's functional limitations.**

Plaintiff claims the ALJ erred by asking the vocational expert a hypothetical question that omitted some of Plaintiff's functional limitations. ECF No. 12 at 17–

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 17

19. At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his or her] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (first alteration in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). "Hypothetical questions posed to a [vocational expert] must 'set out *all* the limitations and restrictions of the particular claimant . . . ." *Bray*, 554 F.3d at 1228 (omission in original) (quoting *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991)). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Id.* (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

Plaintiff contends the ALJ's hypothetical question was incomplete because it omitted the frequency or duration of the sit/stand option included in the residual functional capacity. ECF No. 12 at 18. Plaintiff is incorrect. The ALJ's hypothetical question included the following functional limitations: "This individual is capable of a full range of light work with the following exceptions: standing and walking is limited to four hours total in the day . . . ." AR 94. The vocational expert testified the standing and walking limitations alone would render the hypothetical person unable to perform the past relevant work involved here. AR 95. However, the vocational expert testified the hypothetical person should be able to perform the

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 18

duties required of several light occupations. AR 95. In response to the ALJ's follow-up question, the vocational expert specified that each of those occupations would have a sit/stand option "essentially at the will of the employee." AR 96.

Plaintiff's argument assumes the ALJ's step five analysis was incomplete because it omitted evidence that the ALJ erroneously rejected in prior steps. *See* ECF No. 12 at 17–19. But as discussed above, the ALJ did not err in prior steps. Therefore, the ALJ asked the vocational expert a complete hypothetical question about a person with Plaintiff's functional limitations.

**F.     The ALJ properly considered Plaintiff's borderline age.**

Plaintiff claims the ALJ erred by failing to consider whether to apply a higher age category when Plaintiff was just three months short of age 50 on the date of the ALJ's decision. ECF No. 12 at 19. Plaintiff is factually mistaken. The ALJ found that while Plaintiff was a "younger individual" on the alleged disability onset date, he "subsequently changed age category to closely approaching advanced age." AR 39. The ALJ then found Plaintiff is not disabled under medical-vocational rule 202.14, AR 40, which applies to a person "[c]losely approaching advanced age," 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.14. Therefore, the ALJ properly considered Plaintiff's borderline age.

In sum, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards, that

Plaintiff does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. The ALJ's decision is **AFFIRMED**.

4. The Clerk's Office is directed to **ENTER JUDGMENT** in the Commissioner's favor.

5. All pending motions are **DENIED AS MOOT**.

6. All hearings and other deadlines are **STRICKEN**.

7. The Clerk's Office is directed to **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 31st day of December 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge